DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Terrell L. Riley, appeals from a judgment of conviction in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant and his co-defendant, Demetrius Williams, were indicted on charges of: (1) possession of cocaine, in violation of R.C. 2925.11, with a firearm specification; (2) illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1); (3) possession of marijuana, in violation of R.C. 2925.11; and (4) having weapons while under a disability, in violation of R.C. 2923.13(A)(2) and (A)(3). Appellant and Williams entered pleas of not guilty to all charges and proceeded to a joint trial before a jury.[1]
 {¶ 3} At the conclusion of the State's case, the trial court granted the State's motion to include a jury instruction on complicity in regard to the charges for possession of cocaine and illegal use or possession of drug paraphernalia. At the conclusion of all the evidence, the jury found appellant guilty of complicity to the possession of cocaine, with a gun specification, and complicity to the illegal use or possession of drug paraphernalia. The trial court found appellant not guilty of possession of marijuana, and dismissed the charge of having a weapon while under a disability. The trial court found that the sentence for the drug paraphernalia charge merged into the sentence for the cocaine charge; sentenced appellant to a term of six years on the cocaine charge, plus one year for the firearm specification, to be served consecutively; and assessed appellant a $10,000 fine. Williams was convicted of the same charges and appealed separately. State v. Williams, 9th Dist. No. 21840,2004-Ohio-4316. Appellant now appeals to this Court and assigns six errors for review. Some assignments of error will be considered together for ease of discussion.
 II. Assignment of Error No. I
"Appellant's convictions of complicity to the offense of possession of cocaine, complicity to the offense of illegal use or possession of drug paraphernalia, and the gun specification, [were] contrary to the manifest weight of the evidence."
 Assignment of Error No. III
"The trial court erred in failing to grant appellant's criminal Rule 29 motion to dismiss the complicity to the offense of possession of cocaine, complicity to the offense of illegal use or possession of drug paraphernalia, and the gun specification charge, following the conclusion of the state's case."
 {¶ 4} In his first and third assignments of error, appellant contends that the jury's verdicts were supported by insufficient evidence as a matter of law and were also against the manifest weight of the evidence. Specifically, appellant attacks the credibility of the prosecuting witnesses, points to conflicts in the testimony of the prosecuting witnesses, asserts a lack of any evidence that he possessed weapons or drugs, and asserts a lack of evidence demonstrating complicity.
 {¶ 5} Sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Upon a challenge to sufficiency of the evidence, the trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). On review, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 50, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 61 L.Ed.2d 560. "In essence, sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386.
 {¶ 6} When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} Appellant was convicted of complicity to possess cocaine, in violation of R.C. 2925.11(A); complicity to illegally use or possess drug paraphernalia, in violation of R.C.2925.14(C)(1); and a firearm specification, in violation of 2941.141(A).
 {¶ 8} To convict appellant of the possession of cocaine, the State must have proven that he did "knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). To convict appellant of the illegal use or possession of drug paraphernalia, the State must have proven that he did "knowingly use, or possess with purpose to use, drug paraphernalia."[2] R.C.2925.14(C)(1). To convict appellant of the firearm specification, the State must have proven that he "had a firearm on or about [his] person or under [his] control while committing the offense." R.C. 2941.141.
 {¶ 9} Possession is statutorily defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21 provides the requirements for criminal liability and states: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C.2901.21(D)(1).
 {¶ 10} As charged in this case, complicity is established when one acts with the kind of culpability required for the commission of an offense and aids or abets another in committing the offense. R.C. 2923.03(A)(2). A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime, and shares the criminal intent of the principal. State v. Johnson
(2001), 93 Ohio St.3d 240, syllabus. "Such intent may be inferred from the circumstances surrounding the crime." Id.
 {¶ 11} The State presented evidence through several law enforcement officers which, if credited by the jury, would establish the following. Upon receiving information that crack cocaine was being sold from a house at 708 Raymond, Akron, Ohio, the police organized three controlled drug buys from the house. Subsequently, the police obtained a search warrant, and executed the warrant on June 25, 2003, along with the Special Weapons and Tactics ("SWAT") team and the Street Narcotics Uniform Detail ("SNUD"). They used a battering ram on the front door and several "flash bang" devices which create noise and smoke to aid the officers in entering the house. During the execution of the warrant, police found a substance, later determined to be 13.25 grams of crack cocaine, a microwave oven, a digital scale with cocaine residue, a pair of walkie-talkies, an operable shotgun, two operable handguns inside of socks, ammunition, several crack pipes, and marijuana.[3] Appellant was found sitting on a bed in an upstairs bedroom, with $482 in cash in his pocket. His co-defendant was attempting to exit by way of a window of the same room, and had $610 in cash in his pocket.
 {¶ 12} Alease Fleming and Verondia Moss also testified on behalf of the State. They each testified that they had lived in the house since approximately April, 2003. Fleming testified that Marie Tate, known to her to be a drug dealer, had come to live at the house when Tate's previous home was robbed. She also stated that Tate's "man," Harry Floyd,[4] a drug dealer and drug supplier from Detroit, moved into the house earlier in the year. According to Fleming, when Floyd left, he sent appellant and Williams from Detroit to sell drugs from the house. They arrived three weeks before the police raid. Fleming testified that appellant and Williams took control of the house and her — even hitting her in the mouth. She also testified that they carried weapons, and sold crack cocaine from the house. She stated that drugs were found in the bedroom used by appellant and Williams.
 {¶ 13} Moss testified that the lease for the house was in her name. She reported that she was beaten up by Marie Tate and Harry Floyd on April 1, 2003, resulting in her hospitalization. Moss testified that appellant and Williams had been living at the house and selling drugs for about a month.[5] Moss further testified that she had had several confrontations with the defendants and essentially lost control of her house to them. Moss testified that she asked them to move out, but they refused.
 {¶ 14} A law enforcement official testified that appellant's possession of a large amount of cash and his close proximity to the drugs were circumstantial evidence of his constructive possession of cocaine. Another law enforcement official testified that microwave ovens, digital scales, and walkie-talkies were commonly used by drug dealers.
 {¶ 15} Appellant testified in his own behalf. He stated that he was in Detroit at 9:00 a.m. on June 25, 2003, the day of the police raid, when he received a telephone call from a cousin. The cousin reportedly asked him to go to Akron to inspect a house he was considering buying. Appellant invited Williams to travel to Akron with him. Appellant stated that he purchased two round-trip bus tickets over the internet, and that he and Williams left Detroit at approximately 2:00 p.m. After making several stops along the way, he stated that they arrived in Akron at 5:10 p.m. Fleming and another resident of the house, Donald Adams, picked the men up from the bus station and drove them to 696 Raymond, the house appellant was to inspect. After viewing the house, appellant and Williams walked to 708 Raymond where they talked and then rested until their planned return trip to Detroit at midnight. Appellant claimed he fell asleep on a bed and was awakened during the raid. He denied knowledge or possession of the weapons, and also denied possession of drugs.
 {¶ 16} On appeal, appellant points out that Fleming is an admitted user of crack cocaine, a convicted felon, and had used cocaine several times on the day of the police raid. Appellant also points out that Moss pled guilty to permitting drug abuse and agreed to testify in the present matter, in return for receiving probation. He notes discrepancies in the testimony of Fleming and of Moss regarding whether they slept on the first or third floors, and also in Fleming's in-court testimony as compared to her prior statement regarding whether Marie Tate supplied her with drugs.
 {¶ 17} Sgt. Jason Malick testified that Fleming did not appear to be impaired at the time of the raid. In addition, Fleming explained that she and Moss had recently moved from the first floor to the third floor attic out of fear of Tate and Floyd. The fact that Moss pled guilty in her own case and agreed to testify in exchange for probation was revealed to the jury. She also testified that her plea agreement required her to testify to the truth.
 {¶ 18} Appellant claims there was no evidence that he possessed a weapon, controlled drugs, or that he was present in the bedroom where drugs were found on the day of the execution of the search warrant. In addition, he argues that the State failed to present any evidence of complicity. However, Fleming testified that drugs were found in the bedroom occupied by defendants, that both defendants carried handguns inside of socks, and that the two handguns and shotgun found on the premises belonged to the defendants. Moss testified that appellant had been selling drugs from the house. A large amount of cash was found in his pocket. The shotgun was found between the mattress and box springs of the bed on which appellant was sitting when the police arrived, and drugs were also found in the same room.
 {¶ 19} The fact that appellant did not have cocaine or weapons immediately on his person at the time of the raid does not mean that he did not possess them or aid and abet in the possession of them. A person may knowingly possess a substance or object through either actual or constructive possession. Statev. Hilton, 9th Dist. No. 21624, 2004-Ohio-1418, ¶ 16. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession."State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Circumstantial evidence is sufficient to establish dominion and control over the controlled substance. See State v. Jenks,
(1991), 61 Ohio St.3d 259, 272. Appellant's possession of a large amount of cash and his close proximity to the drugs were circumstantial evidence of his constructive possession of cocaine. State v. King (Sept. 18, 1996), 9th Dist. No. 95CA006173.
 {¶ 20} In pointing to conflicts in the testimony, appellant has essentially challenged the credibility of Fleming and Moss, and their version of events. However, the "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. There were two versions of events, and the jury was entitled to credit either version. "[W]hen conflicting evidence is presented at trial, a conviction is not against the weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
 {¶ 21} Appellant's version of events strains credulity. He claims his story is corroborated by the evidence, but, in fact, his story suffers from a lack of corroboration. He states that he traveled by bus from Detroit to Akron — with several stops along the way — in just three hours on June 25, 2003, but that he had no proof of the trip because the police confiscated his ticket. Bus schedules are commonly available and internet purchases leave an evidentiary trial that would have been readily available to appellant or his counsel. Appellant also claims that he received mail from Moss and Fleming while he was in jail, stating that their testimony against him was being provided in response to threats by the prosecutor. The mail however, was not offered into evidence. Absent such corroboration, appellant's argument fails to overcome the weight of the State's evidence.
 {¶ 22} There was testimony before the jury that would support a conclusion that appellant was sent to the house by a drug dealer to sell drugs, that he worked with Marie Tate in selling drugs, that he had been selling drugs for several weeks, that he controlled weapons, and that he exerted control over the house and its activities. Therefore, there was ample evidence introduced to support the verdict of the jury.
 {¶ 23} Upon review of the record, this Court does not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed as being against the manifest weight of the evidence. Furthermore, having found that appellant's convictions were not against the manifest weight of the evidence, this Court also concludes that there was sufficient evidence to support the jury verdicts with respect to these charges. See State v. Roberts,
(Sept. 17, 1997), 9th Dist. No. 96CA006462. Accordingly, the first and third assignments of error are overruled.
 Assignment of Error No. II
"Whether the trial court's sentence was contrary to law since it did not take into account fundamental sentencing principles, express sentencing criteria, or make findings pursuant to ohio Revised Code Section 2929.14(b)[.]"
 {¶ 24} Appellant asserts error in the sentence handed down by the trial judge because she did not impose the minimum sentence and failed to make the findings required by R.C. 2929.14(B). The State argues that any error is waived because appellant failed to enter an objection at the sentencing hearing. This Court concludes that any error is waived because of appellant's failure to bring the matter to the attention of the trial court at a time when the error could have been corrected.
 {¶ 25} The trial court found that the sentence for the offense of complicity to possess drug paraphernalia merged with the sentence for the offense of complicity to illegally use or possess cocaine. The trial court then sentenced appellant to a term of six years on the cocaine charge, plus one year for the firearm specification, to be served consecutively, and also imposed a fine. On appeal, appellant contends that his second-degree felony carried an applicable prison term of two, three, four, five, six, seven or eight years pursuant to R.C.2929.14(A).
 {¶ 26} In sentencing an offender who has not previously served a prison term, the Ohio Supreme Court has indicated that the trial court must first consider imposing the minimum sentence and depart from that sentence only upon a finding that either or both of the statutorily sanctioned reasons exist for exceeding the minimum term. State v. Edmonson (1999), 86 Ohio St.3d 324,326. See, also, R.C. 2929.14(B). More recently, the Ohio Supreme Court has stated that the trial court is required to make these findings on the record of the sentencing hearing. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph two of the syllabus. The Comer court indicated that the purpose for requiring these findings at the time of the sentencing hearing, rather than in a judgment entry, is to allow trial counsel "the opportunity to correct obvious errors * * * [and] encourages judges to decide how the statutory factors apply to the facts of the case." Id. at ¶ 22. The procedure is also said to enable an appellate court to conduct a meaningful review of the sentencing decision. Id. We understand this to mean that the Comer
procedure provides trial counsel with an opportunity to enter an objection at a time when these type of sentencing errors may be corrected by the trial court.
 {¶ 27} In the case at bar, the record fails to demonstrate that the trial judge engaged in the required analysis before varying from the minimum sentence. However, the appellant also failed to object to the sentencing procedure and bring any error to the attention of the trial court at the time. It has been stated many times that an error must be brought to the attention of the trial court at a time when it may be corrected and may not be raised for the first time on appeal. State v. Dent, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 6, citing State v. Awan
(1986), 22 Ohio St.3d 120, syllabus. Closer to the point, the Ohio Supreme Court has specifically held that a failure to object to sentencing errors in the context of allied offenses will constitute a waiver of such errors. State v. Comen (1990),50 Ohio St. 3d 206, 211. See, also, State v. Yeager, 7th Dist. No. 03 CA 786, 2004-Ohio-4406, at ¶ 3 (following Comen).
 {¶ 28} While counsel might be excused from entering such an objection in cases heard before Comer, the sentencing hearing in the present case took place after the Ohio Supreme Court issued its opinion in Comer. The appellant below and his counsel were present at the sentencing hearing and had the opportunity to bring any alleged error in this regard to the attention of the trial court. In fact, the record indicates that following the recitation of the sentence, the trial judge specifically addressed both the appellant and his counsel and inquired whether there was anything further to be included in the record. While each spoke to other matters, no objection to the failure to apply a minimum sentence, or to the court's sentencing procedure, was made. Consequently, the failure to enter a timely objection constitutes waiver of the error attempted to be raised now on appeal.
 {¶ 29} Other courts have addressed a trial court's failure to make the findings that justify a variance from a minimum sentence or to state reasons for a consecutive sentence only upon a notice of plain error. See, e.g., State v. Brown (Feb. 9, 2001), 6th Dist. No. WD-00-033 (sentencing issue considered under plain error doctrine, but rejected because two murders were not part of the same act or transaction and consecutive sentences could be imposed); State v. Shinn (June 14, 2000), 4th Dist. Nos. 99 CA 29 and 99 CA 35 (finding that a failure to engage in the required analysis before varying from the minimum sentence is cognizable as plain error); State v. Kendall, 5th Dist. No. 2003CA00075, 2004-Ohio-3768, at ¶ 30 (Hoffman, P.J., concurring) (failure to object to trial court's failure to make findings where it has stated its reasons for consecutive sentences on the record waives error, absent a finding of plain error). See, also, State v.Johnson, 4th Dist. No. 03CA11, 2004-Ohio-2236, at ¶ 8 (denying defendant's argument that plain error analysis does not apply to sentencing error regarding restitution).
 {¶ 30} In the present appeal, appellant has not argued plain error. Consequently, this Court will not consider whether plain error exists in this case. See State v. Knight, 9th Dist. No. 03CA008239, 2004-Ohio-1227, at ¶ 10.
 {¶ 31} The right to have the trial court state findings as to why it was not imposing a minimum sentence does not appear to be an absolute right. Cf. State v. Castle, 4th Dist. No. 03CA24, 2004-Ohio-1992, at ¶ 9, citing State v. Green (2000)90 Ohio St.3d 352, 358, and State v. Campbell (2000),90 Ohio St.3d 320, 324-25. (Crim.R. 32(A)(1) confers an "absolute right of allocution" and cannot be waived). Nor is it a constitutional
right. Certainly, it is unlike a Crim.R. 11 colloquy where the trial court has a responsibility to explain Constitutional rights to a defendant. Rather, it is only a court-made requirement regarding an explanation of the court's personal thought process when imposing sentence. See Edmonson, 86 Ohio St.3d 324;Comer, 2003-Ohio-4165.
 {¶ 32} In this case, the record reveals that appellant failed to object to the sentencing procedure of the trial judge. Any error in that procedure is therefore waived. Accordingly, the second assignment of error is overruled.
 Assignment of Error No. IV
"The trial court erred in granting appellee's motion to add jury charges of complicity to the offense of possession of cocaine and complicity to the offense of illegal use or possession of drug paraphernalia."
 {¶ 33} Appellant asserts that the trial court erred in granting the State's motion to add complicity to the jury charge regarding possession of cocaine and illegal use or possession of drug paraphernalia. The argument is without merit.
 {¶ 34} When reviewing a trial court's jury instruction, the proper standard of review for an appellate court is whether the trial court's decision to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 35} The indictment in this case charged appellant and his co-defendant as principal offenders, along with Marie Tate. At the conclusion of the State's case, the State requested that the trial court give a complicity instruction to the jury on the charges of possession of cocaine and illegal use or possession of drug paraphernalia. The trial court granted the motion, instructed the jury that they could find appellant guilty if he aided or abetted another in committing these offenses, and provided alternative verdict forms to the jury. The jury returned verdicts of guilty as to the complicity form of the verdict in each case. Appellant claims the evidence did not reasonably indicate that he was an aider and abettor, rather than a principal offender.
 {¶ 36} R.C. 2923.03(F) states: "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." Accordingly, "a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." State v. Herring (2002),94 Ohio St.3d 246, 251.
See, also, State v. Tumbleson (1995), 105 Ohio App.3d 693,696-97.
 {¶ 37} In State v. Johnson (2001), 93 Ohio St.3d 240, syllabus, the Supreme Court of Ohio set forth the requirements for a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2):
"To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."
 {¶ 38} Given the evidence presented at the trial that Floyd and Tate had a relationship and were both drug dealers, that Floyd sent appellant and Williams to the house to sell drugs, that Tate exerted control over the people and the activities in the house, and that Tate, appellant and Williams conducted drug sales from the house at 696 Raymond, this Court concludes that the trial court did not err in instructing the jury on complicity. The fourth assignment of error is overruled.
 Assignment of Error No. V
"The trial court's instruction to the jury on complicity resulted in a brady discovery violation."
 {¶ 39} In his fifth assignment of error, appellant contends that the jury instruction on complicity resulted in a Brady
violation. In Brady v. Maryland (1963), 373 U.S. 83,10 L.Ed.2d 215, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. In his supporting argument, appellant contends that because the jury was instructed on complicity, he was therefore entitled to the name of the confidential informant. He reasons that such information could have led him to discover whether appellant was present to observe the sale of cocaine to the informant.
 {¶ 40} The central question in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material to guilt or punishment. State v. Johnston (1988),39 Ohio St.3d 48, 60. The Ohio Supreme Court has held:
"In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense." Id. at paragraph five of the syllabus, following United States v. Bagley (1984), 473 U.S. 667,87 L.Ed.2d 481.
 {¶ 41} This Court must determine, therefore, whether there is a reasonable probability that the result of the trial would have been different if the evidence had been disclosed to the defense, such that the suppression of the evidence undermines confidence in the outcome of the trial.
 {¶ 42} Detective Jones testified that the confidential informant made three controlled buys from someone other than appellant at a time shortly before the police raid. Appellant argues that if he could have examined the confidential informant, he may have learned "whether the Appellant was present and observed on those occasions." Appellant was not charged with the sale of cocaine, but rather with complicity to the possession of cocaine and illegal use or possession of drug paraphernalia. As this Court concluded above, the evidence presented at the trial fully supported the verdict of the jury. Therefore, had the identity of the confidential informant been disclosed to the defense and the defense been permitted to cross-examine the informant, there is not a reasonable probability that the result of the proceeding would have been different. Any testimony from the informant as to whether appellant was present at previous drug buys would not be material to guilt or punishment on the charges on which he was convicted. Accordingly, the fifth assignment of error is overruled.
 Assignment of Error No. VI.
"The trial court erred in allowing a witness to read a hearsay statement to the jury."
 {¶ 43} In his sixth assignment of error, appellant contends that the trial court erred in permitting Detective Allen Jones to read portions of a statement made by prosecuting witness Moss. This Court disagrees.
 {¶ 44} During the cross-examination of Detective Jones by appellant's co-defendant, the witness was asked to read portions of Moss's statement. Those portions of the statement revealed that Moss sold drugs from the residence she rented, that Floyd also lived there, that Floyd and Tate had beaten her and caused her to be hospitalized, that Tate had a gun with a red laser on it, that Tate had loaned her car to Moss, that the house at 696 Raymond was in disarray, but not in need of much carpentry work, and that Tate probably had both weapons and drugs.
 {¶ 45} The State then moved, pursuant to Evid.R. 106, to have the statement read in its entirety. Evid.R. 106 provides:
"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it."
 {¶ 46} Following a request by the trial judge that the State limit its request, the trial court permitted Detective Jones to read portions of the statement that indicated: (1) Harry Floyd, Marie Tate, appellant and Williams all sold crack cocaine. (2) Harry Floyd, Marie Tate, appellant and Williams "ran" the entire first and second floor. They all "hung out" in the room with the microwave and "did the deals" there. (3) Appellant and Williams were at the house "around Saturday, June 21, 2003." (4) Williams would carry his gun inside a sock, and appellant would carry his gun with or without a sock. Over objection, the trial court permitted these portions of the statement to be read because "the door has been opened by defense counsel."
 {¶ 47} Upon review, this Court concludes that there is no error in this regard because the portions of the statement read into the record pursuant to Evid.R. 106 were either cumulative of the testimony of Moss and Fleming or not prejudicial to appellant. The sixth assignment of error is overruled.
 III. {¶ 48} Appellant's six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, J., Whitmore, J., concurs.
[1] Co-indictee, Marie Tate, was indicted on the same charges, plus an additional count of possession of cocaine, an additional firearm specification, and one count of trafficking in cocaine. Her case proceeded separately, and at the time of appellant's trial, her whereabouts were apparently unknown.
Co-indictee, Verondia Moss, was charged only with permitting drug abuse. She testified on behalf of the State in the present matter.
[2] R.C. 2925.14(A) defines "drug paraphernalia" as follows:
"Any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance in violation of this chapter."
[3] The shotgun was seized from the bedroom where appellant and Williams were found when the police arrived. The shotgun was between the mattress and box springs on which appellant was sitting. Cocaine, a digital scale with cocaine residue, a microwave oven, .38 caliber ammunition, marijuana, and a pair of walkie-talkies were found in another room said to be used by appellant, Williams, and others to sell drugs.
[4] Harry Floyd was variously referred to as Harry Slim, Harry Lloyd, and Detroit Slim.
[5] On cross-examination, Moss admitted that she had made a prior statement to police that the co-defendants arrived on June 21. While this statement conflicts with her testimony in court that the co-defendants arrived a month earlier, and is pointed to as a contradiction by appellant, it also fails to support appellant's testimony that he arrived late on the afternoon of the day of the raid.