DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, James McClendon, appeals his conviction for domestic violence and the sentence imposed by the Summit County Court of Common Pleas. We affirm.
 {¶ 2} An indictment was filed on September 13, 2004, charging Defendant with felonious assault under R.C. 2903.11(A)(1), with a repeat violent offender specification under R.C. 2941.149, domestic violence under R.C. 2919.25(A), and another count of domestic violence, pursuant to R.C. 2919.25(C).
 {¶ 3} After a jury trial, on November 19, 2004, Defendant was found guilty of domestic violence under R.C. 2919.25(A), a third degree felony. The trial court, on November 22, 2004, sentenced Defendant to four years incarceration. Defendant now appeals, asserting three assignments of error for our review.
 ASSIGNMENT OF ERROR I
"[Defendant's] conviction of domestic violence was contrary to the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Defendant argues that his conviction for domestic violence under R.C. 2919.25(A) was against the manifest weight of the evidence. We disagree.
 {¶ 5} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, we will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 6} Defendant was convicted of domestic violence under R.C. 2919.25(A) which provides that: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." It is not disputed that Defendant and the victim, Sandra Williams, lived together and thus were household members for the purposes of R.C. 2919.25. Defendant argues that it was against the manifest weight of the evidence to find that he knowingly caused physical harm to Ms. Williams. We do not find that the jury so clearly lost its way that Defendant's conviction was the result of a manifest miscarriage of justice. See Otten, supra.
 {¶ 7} The evidence presented at trial established the following: over thirty years after attending the same high school, Williams and Defendant, now in their 50's, became reacquainted. They began living together in Williams' home in February, 2004. On September 3, 2004, the date of the incident, Williams had gone to a funeral and returned home at about 7:00 pm, after having consumed a considerable amount of alcohol. When she returned home, she checked the caller ID and noticed a number of calls from a particular number. Williams called the number and discovered that a lady named Robin (a coworker whom Defendant carpooled to work with) had been calling. Williams went into the bedroom where Defendant had been sleeping and asked him about the phone calls. She shook Defendant until he got out of bed, and they started arguing. The argument proceeded from the bedroom into the living room.
 {¶ 8} Williams testified that she got "up in [Defendant's] face," pushed him, and was accusing him of having relations with other women. Defendant then hit Williams in the face. Williams testified that she "fell back into the bedroom," and lost her glasses. She did not recover her glasses until one of the responding police officers found them for her.
 {¶ 9} According to Williams' trial testimony, after being hit the first time, she got up "and came back at [Defendant.]" Before she could continue to argue with Defendant, Williams "asked him, `What the hell did you hit me for,' and that's when he hit [her] again." Williams thereafter tried to get her house key off of Defendant's key chain. She took out a drawer of his clothes from the dresser and threw the clothes on the floor, then threw the drawer at Defendant. Williams continued to yell at him while he was gathering some of his clothes to leave, stating: "Don't put your hands on me again [.]"
 {¶ 10} As Defendant was getting his belongings out of the house, Williams called 911. Williams stated that she "remember[ed] calling 911 because after the police came there was blood and stuff all over [her] phone and on [her] stand."
 {¶ 11} As a result of being hit, Williams had bleeding in her brain and she suffered a massive injury around her left eye, which caused severe vision loss in that eye. The bones behind her eye were reduced to fragments and a plastic surgeon had to put a plate in to keep her eye from falling into the socket.
 {¶ 12} Erin Craig, a paramedic who responded to the 911 call, testified that when she arrived at Williams' residence, Williams told her that Defendant had "punched [her] with a closed fist, [she] fell down, bumped her head. She attempted to get up and he punched her two or three more times and she was unable to get up." Craig testified that upon examination, she found that Williams had a bump on the back of her head and the left side of her face was swollen; everything was painful when touched, and she had been bleeding.
 {¶ 13} Officer Daniel Engelhart and his partner, Officer James Donahue, responded to the scene. They both testified that when they arrived at Williams' home, they saw blood on the living room carpet, on a table, on the bathroom mirror, and on a washcloth. The furniture was moved aside slightly showing evidence of a struggle. Williams emerged from the bathroom with a badly swollen lip and eye. She told Officer Donahue that Defendant had said "I'll f____k you up and that's when he hit her three to four times[.]"
 {¶ 14} The officers went and found Defendant and he told them that Williams had confronted him with a bat and then he "smacked her around, took the bat from her." Then Defendant changed his story a bit, "he said that he took the bat and then smacked her around; [he] put [the events] in reverse order."
 {¶ 15} Williams maintains that she never touched the bat during her argument with Defendant. Officer Donahue testified that he saw the bat against the bedroom wall, which was in the same place that Williams had kept it for over seven years. Testimony was introduced showing that the bat did not have any marks on it, that Defendant did not have any marks from being hit, in fact, immediately after the incident, Defendant could not remember to tell the police where he had been hit, and the bat was in the same place that it had been for over seven years when Officer Donahue saw it.
 {¶ 16} Officer Engelhart testified that "[a]fter [Defendant] told us the second version [of his story], he stated that [he told Williams], "That's what you get[.]" Defendant then told the police that Williams could not hurt him. He stated "She cannot hurt me."
 {¶ 17} Defendant maintains that his conviction for domestic violence was against the manifest weight of the evidence. Defendant argues that, after the argument, as he attempted to leave Williams' home, she obtained the baseball bat and tried to strike him with it. He claims that, in self-defense, he struck Williams with an open hand. The above testimony contradicts Defendant's claims.
 {¶ 18} In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995),106 Ohio App.3d 753, 760.
 {¶ 19} From the evidence presented, the jury could find that Defendant was guilty of domestic violence; that he "knowingly cause[d] * * * physical harm to a * * * household member." R.C. 2919.25(A). The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in failing to grant [Defendant's] [Crim.R.] 29 motion to dismiss the domestic violence charge following the conclusion of the case."
 {¶ 20} In his second assignment of error, Defendant maintains that the State did not present sufficient evidence to convict him of domestic violence, and thus his Crim.R. 29 motion to dismiss should have been granted. We disagree.
 {¶ 21} Defendant moved for acquittal pursuant to Crim.R. 29(A) at the close of the State's case. After he moved for acquittal, he presented his own testimony. Defendant failed thereafter to renew his motion for acquittal at the close of all of the evidence, thus he waived the issue.
"[A] defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." Statev. Antoline, 9th Dist. No. 02CA008100, 2003-Ohio-1130 at ¶ 38, quotingState v. Miley (1996), 114 Ohio App.3d 738, 742.
 {¶ 22} Upon reviewing the record, we find that Defendant failed to preserve any objection to the sufficiency of the evidence. Consequently, Defendant waived any objection to the sufficiency of the evidence, and he failed to preserve the issue for appeal. As a result, we need not further consider his second assignment of error. See State v. Widder, 9th Dist. No. 21383, 2003-Ohio-3925, ¶ 5-6; State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527 at ¶ 7-8. Defendant's second assignment of error is waived.
 ASSIGNMENT OF ERROR III
"Whether the trial court's sentence was contrary to law since it did not take into account fundamental sentencing principles, express sentencing criteria, or make findings pursuant to [R.C.] 2929.14(B)?"
 {¶ 23} In his final assignment of error, Defendant maintains that his four year prison sentence was contrary to law as it was not the "shortest prison term authorized for the offense" as required by R.C. 2929.14.
 {¶ 24} R.C. 2929.14(B) provides that "if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense [.]" In the case at hand, Defendant had served a prior prison term. In fact, he stipulated prior to trial that he had two prior convictions for domestic violence and one prior conviction for voluntary manslaughter. Therefore, under R.C. 2929.14(B), the court did not have to impose the shortest prison term.
 {¶ 25} Defendant was convicted of a third degree felony, the basic prison term for which is one, two, three, four, or five years. R.C.2929.14(A). Defendant was sentenced to four years in prison, which is within the statutorily permissible limit.
 {¶ 26} In addition, Defendant did not object to the term of his sentence at the sentencing hearing, and thereby forfeited the above sentencing objection. State v. Riley, 9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 30, 32. Consequently, we overrule Defendant's third assignment of error.
 {¶ 27} Defendant's three assignments of error are overruled and his conviction and sentence are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J. Concurs
Carr, J. Concurs, saying:
 {¶ 28} I concur in judgment only as to the third assignment of error based on my dissent in State v. Riley, 9th Dist. No. 21852, 2004-Ohio-4880.