DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Mark P. Burton has appealed from his guilty pleas and sentence in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On September 24, 2004, Defendant-Appellant Mark P. Burton was indicted on the following charges: 1) aggravated burglary, in violation of R.C. 2911.11(A)(1)/(A)(2), a felony of the first degree, with a firearm specification in accordance with R.C. 2941.145; 2) kidnapping, in violation of R.C.2905.01(A)(3)/(A)(4), a felony of the first degree, with a firearm specification in accordance with R.C. 2941.145; 3) rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree, with a firearm specification in accordance with R.C. 2941.145; 4) felonious assault, in violation of R.C. 2903.11(A)(2), with a firearm specification in accordance with R.C. 2941.145; 5) violating a protection order, in violation of R.C. 2919.27, a felony of the third degree; 6) tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of a third degree; 7) carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and 8) possessing criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree. On October 13, 2004, Appellant pled "not guilty" to all charges in the indictment. On November 29, 2004, Appellant filed notice that he was pleading "not guilty" and "not guilty by reason of insanity."
 {¶ 3} A supplemental indictment was filed on December 3, 2004, charging Appellant with an additional four counts. The charges were added as additional counts to the original indictment as follows: Count 9-having a weapon while under disability, in violation of R.C. 2923.13(A)(3)/(A)(4), a felony of the third degree; Count 10-having a weapon while under disability, in violation of R.C. 2923.13(A)(3)/(A)(4), a felony of the third degree; Count 11-domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree; and Count 12-domestic violence, in violation of R.C. 2919.25(C), a misdemeanor of the second degree. Appellant pled "not guilty" to the charges in the supplemental indictment.
 {¶ 4} On December 24, 2004, after receiving the court ordered psychological evaluation, Appellant withdrew his "not guilty by reason of insanity" plea. On March 13, 2005, the kidnapping charge was amended to a felony of the second degree and included the language "for the purpose of sexual motivation-victim left in a place of safety unharmed." On March 14, 2005, however, Appellant again filed a "not guilty by reason of insanity" plea. He also requested another court ordered psychological evaluation.
 {¶ 5} On March 23, 2005, a plea agreement was reached and Appellant pled guilty to the following charges: 1) aggravated burglary, in violation of R.C. 2911.11(A)(1)/(A)(2), a felony of the first degree, with a firearm specification in accordance with R.C. 2941.145 (count one); 2) kidnapping, in violation of R.C.2905.01(A)(3)/(A)(4), a felony of the second degree (amended count two without the firearm specification); 3) violating a protection order, in violation of R.C. 2919.27, a felony of the third degree (count five); 4) having a weapon while under disability, in violation of R.C. 2923.13(A)(3)/(A)(4), a felony of the third degree (count 9, which merged with count 10); and 5) domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree (count 11). All other charges and specifications were dismissed. After a pre-sentence investigation was completed, Appellant was sentenced as follows: three years incarceration for the firearm specification in count one; seven years incarceration for count one, aggravated burglary; five years incarceration for count two, kidnapping; one year incarceration for count five, violating the protective order; two years incarceration for count nine, having a weapon while under disability; and one year incarceration for count 11, domestic violence. The three year sentence was ordered served consecutively to the aggravated burglary and violation of a protection order convictions; the remaining convictions were ordered served concurrently to the aggravated burglary and violating protective order convictions. Appellant's total sentence of incarceration was 11 years. Appellant was also labeled a sexually oriented offender.
 {¶ 6} Appellant has appealed his guilty pleas and his sentences, asserting two assignments of error, which have been rearranged for ease of analysis.
 II Assignment of Error Number Two
"THE TRIAL COURT ERRED IN ACCEPTING THE APPELLANT'S PLEAS OF GUILTY TO THE CHARGES OF AGGRAVATED BURGLARY, KIDNAPPING, VIOLATION OF A PROTECTION ORDER, HAVING A WEAPON UNDER DISABILITY, AND DOMESTIC VIOLENCE AND FINDING THAT THESE PLEAS WERE MADE VOLUNTARILY AND NOT UNDER DURESS."
 {¶ 7} In his second assignment of error, Appellant has argued that the trial court erred in accepting his guilty pleas. Specifically, Appellant has argued that the trial court did not ensure his pleas were made voluntarily and that he felt coerced by the trial court to enter the guilty pleas. We disagree.
 {¶ 8} The basic tenets of due process require that a guilty plea be made "knowingly, intelligently, and voluntarily." Statev. Engle (1996), 74 Ohio St.3d 525, 527. Failure on any of these points "renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." Id. A determination of whether a plea is knowing, intelligent, and voluntary is based upon a review of the record. State v.Spates (1992), 64 Ohio St.3d 269, 272. If a criminal defendant claims that his guilty plea was not knowingly, voluntarily, and intelligently made, such as we have in the instant matter, then the reviewing court must review the totality of the circumstances in order to determine whether or not the defendant's claim has merit. State v. Nero (1990), 56 Ohio St.3d 106, 108. To ensure that a plea is made knowingly and intelligently, a trial court must engage in oral dialogue with the defendant in accordance with Crim.R. 11(C)(2). State v. Sherrard, 9th Dist. No. 02CA008065, 2003-Ohio-365, at ¶ 6, citing Engle,74 Ohio St.3d at 527. Crim.R. 11(C)(2) requires that a trial court determine from conversation with the defendant: 1) whether the defendant's plea was voluntary; 2) whether the defendant understood the effects of the guilty plea at the time he entered it; and 3) whether the defendant, at the time he entered his guilty plea, understood that by entering the plea he was waiving constitutional rights.
 {¶ 9} Appellant has not argued that the trial court failed to explain his constitutional rights or the charges he was pleading guilty to; rather, he has argued that his plea was not voluntary because the trial court coerced him into pleading guilty to a kidnapping charge that included a sexually oriented offender classification. When a defendant claims he was coerced into entering a guilty plea, conclusory allegations and self-serving affidavits are insufficient to rebut a record which shows the plea was voluntary. State v. Roach (June 30, 1998), 9th Dist. No. 97CA006867, at 6, citing State v. Kapper (1983),5 Ohio St.3d 36, 38. Accordingly, the record must be reviewed to determine if the defendant was coerced and the defendant must present sufficient evidence to rebut the record. Id.; See, also,State v. Turner (Sept. 27, 1995), 9th Dist. No. 94CA005954, at 5.
 {¶ 10} While Appellant's allegations of coercion are based on discussions near the end of the plea hearing, an adequate review of the record requires an examination of the entire hearing. At the beginning of the hearing on March 14, 2004, Appellant's counsel made the following inquiry of the trial court:
"Your Honor, it's my understanding that this Court's policy has been for sometime that the last opportunity to enter some type of plea agreement is the Monday afternoon Call Day. Should the matter progress past this afternoon without a plea, then tomorrow morning we would go to trial. If someone had, such as defendant, had a change of heart this Court will not allow any plea agreement to be entered into and the person would have to plead to the entire indictment the morning of trial?"
The trial court informed Appellant's counsel that his understanding was correct. Then the trial court and Appellant participated in the following discourse:
Trial Court: "Mr. Burton, you understand I don't participate in plea negotiations. That's between your lawyer and the prosecutors and you. I don't participate in that. However, this case is set for trial tomorrow."
Appellant: "I'm ready to plead out to it."
Trial Court: "Well, I want you to understand that we have a jury for you tomorrow. We'll be here, the prosecution is prepared to go, your lawyer is prepared to proceed and we will try your case tomorrow."
Appellant: "I just wanted something explained to me. Something was miscommunicated to me."
Trial Court: "You have a clear understanding now of what this plea offer is? Do you have any final questions of your lawyer, sir? Because it's quite late. If we conclude at this time then I will not accept a plea tomorrow to anything except the entire indictment, every charge in it because that's the morning of trial. Do you understand that?"
Appellant: "Yes, Your Honor."
Trial Court: "All right, sir. Do you have any final questions for your lawyer?"
Appellant: "No, Your Honor."
The plea agreement was then recited on the record, as was the sexual oriented offender classification. Appellant's counsel then made the following statement to the trial court:
"Your Honor, we've spent about four hours and 15 minutes hammering things out to this point. Mr. Burton's sister is in the back of the courtroom. I've consulted with her at length about this. She was also, for a very brief moment, allowed to voice her opinion to her brother, which brings us up to this point. I have diagrammed the situation for Mr. Burton. We've gone over it. I have gone over it with him. I've gone over it with his sister. At this point in time I believe that he understands the five counts and the one gun specification that he's pleading to. I've put that diagram, that list of offenses in front of him. I know Mr. Burton is familiar with the English language so he can read it. I believe at this point in time, based upon his representation to this Court about five minutes ago, that he is prepared to enter a guilty plea to those five counts and one specification."
 {¶ 11} Appellant was then placed under an affirmation by the trial court, stating his name and age. The following colloquy followed:
Trial Court: "Now, Mr. Burton, you've heard the recitation of the prosecutor and what your lawyer has told me. They've indicated you're prepared at this time to withdraw your former pleas of not guilty and to enter pleas of guilty to certain specific charges in this indictment. First of all, aggravated burglary, a felony of the first degree, together with the specification that a firearm was used in the commission of the offense; is that correct?"
Appellant: "Yes."
 {¶ 12} The trial court then went through each charge in the plea agreement and Appellant affirmed that he was pleading guilty to those charges. The trial court then explained to Appellant that if it "accept[ed] pleas of guilty to those charges and dismiss[ed] all the remaining counts and specifications, then there [would] be no further proceedings and the trial [that was] set tomorrow will not go forward. Do you understand that?" Appellant answered in the affirmative. The trial court informed Appellant of the constitutional rights he was waiving by entering a guilty plea and Appellant stated that he understood the rights he was waiving. The trial court also informed Appellant of the potential sentences and post-release control for each of the crimes to which he was entering guilty pleas and Appellant stated he understood. The trial court also explained that the gun specification was a separate charge that would have to be served separately from any other sentence Appellant might receive; Appellant stated he understood. The trial court also explained the difference between concurrent and consecutive sentences and Appellant stated he understood. The trial court then re-explained the sentencing on gun specifications and that Appellant would be serving a minimum of three years incarceration simply for the gun specification; Appellant stated he understood.
 {¶ 13} The trial court then informed Appellant that before sentencing he would order a victim impact statement and a pre-sentence investigation report. The trial court explained that it was responsible for sentencing, as a result no one else could tell him what his sentence would be; Appellant stated he understood. Appellant was then asked if anyone promised him anything in exchange for his guilty pleas. Appellant responded: "That the prosecutor would not recommend any time, recommend a specific amount of years that I would receive, Your Honor." The trial court then ensured that Appellant understood that after pleading guilty he would have a felony record. Appellant was then asked a series of questions regarding his counsel's representation and Appellant stated that he had discussed the plea with his attorney and his attorney answered his questions.
 {¶ 14} Appellant did state that he was not completely satisfied with his counsel's work because Appellant did not understand that he was going to be labeled a sexually oriented offender. The trial court explained the classification, assured Appellant that he was not pleading guilty to rape, and informed him that the classification came from the amended kidnapping charge. Appellant told the trial court he did not understand the classification and the trial court explained the reporting requirements. Appellant kept repeating that he did not rape his wife and he did not understand the reason for the classification. The trial court explained it again, but Appellant again stated he did not understand the prosecution's reason for the classification. The trial court explained that the prosecutor is not required to explain its decisions to the court.
 {¶ 15} The trial court then asked if Appellant had any other questions and Appellant stated that he did not agree to the classification and that he did not understand it. To which the trial court responded: "Well, sir, if you don't agree to that and you understand what I'm telling you, then I will not accept this plea, we'll go to trial tomorrow. That's your choice." Appellant answered: "I understand it, Your Honor, but I don't agree to it totally." The trial court replied:
"I understand. It isn't a matter of doing it by halves, Mr. Burton. You either agree and that's it. If you don't agree and you're telling me you don't agree to this plea deal as I've outlined it for you, and have explained it on the record, then that's it. It's 10 minutes of six. We're all prepared to go home. We'll see you in the morning for trial. That's your choice, sir. It's now or never, frankly, in regard to this matter."
Appellant stated he understood and when asked by the trial court if he was prepared to accept the plea agreement Appellant answered: "Yes, Your Honor." The trial court then asked Appellant: "Anything else you need or anything you want to know before you indicate to this Court, to my satisfaction, that you understand this?" Appellant answered: "No, Your Honor."
 {¶ 16} Appellant then pled guilty to each of the charges in the plea agreement, but when asked if he pled guilty because he committed the offenses Appellant stated he did not commit the offenses. The trial court then told Appellant that it would not accept his pleas unless Appellant told the court he did commit the crimes. Appellant then again stated that he did not rape his wife and the trial court explained that the rape charge was dismissed. Appellant responded that he did not commit a sexually oriented offense against his wife. The trial court responded that it would see Appellant for trial the next morning and Appellant blurted out "I agree to it, Your Honor." The trial court then engaged Appellant in the following discussion:
Trial Court: "I'm not going — did you commit these offenses, sir?"
Appellant: "Yes. I just — yes, I did."
Trial Court: "In their entirety, as I have explained them?"
Appellant: "Yes, Your Honor."
Trial Court: "All right, sir. This Court will accept the pleas as knowingly, intelligently, voluntarily made in open court with the advice of counsel."
Appellant did not respond to the trial court's determination and the trial court set the matter for sentencing.
 {¶ 17} After reviewing the plea hearing transcript, we cannot find that the trial court coerced Appellant into pleading guilty. The record shows that the trial court complied with all the requirements of Crim.R. 11. Specifically, we find that Appellant's guilty pleas were voluntary, knowing, and intelligent. Appellant did not produce sufficient evidence to rebut the evidence in the transcript that his pleas were voluntary. While we agree he wavered slightly towards the end of the hearing on the sexually oriented offender classification, the record fails to show he was coerced into pleading guilty. The trial court showed great patience and diligence in explaining the classification to Appellant and it gave him ample opportunity to change his mind and not plead guilty. The trial court's statements concerning the trial starting in the morning if Appellant did not plead guilty to all the charges in the agreement was a restatement of its earlier statements to Appellant and counsel. The trial court was merely stating a fact in accordance with its courtroom procedure; Appellant could plead guilty according to the plea agreement or start trial the next day. After Appellant decided to adhere to the plea agreement and plead guilty to the sexually oriented offender classification, the trial court specifically asked him if he was pleading guilty to the entire agreement and Appellant answered affirmatively. Moreover, when the trial court found that Appellant's plea was knowingly, voluntarily, and intelligently made Appellant did not speak up and claim he was coerced.
 {¶ 18} Based on the foregoing, we find that Appellant's guilty pleas were knowingly, voluntarily, and intelligently made. Appellant's unsubstantiated claims that he was coerced by the trial court are not sufficient to overcome the evidence in the hearing transcript. Accordingly, Appellant's second assignment of error is not well taken.
 Assignment of Error Number One
"THE TRIAL COURT ERRED IN NOT SENTENCING THE APPELLANT TO THE MINIMUM SENTENCE FOR THE CRIMES OF AGGRAVATED BURGLARY AND VIOLATION OF A PROTECTION ORDER BY IMPROPERLY FOLLOWING THE PROCEDURES FOR SUCH A SENTENCE AS STATED IN O.R.C. 2929.14 AND 2929.19"
 {¶ 19} In his first assignment of error, Appellant has argued that the trial court erred in sentencing him beyond the minimum for his aggravated burglary and violation of a protection order convictions. Appellant has also argued that the trial court erred in sentencing him to consecutive sentences.
 {¶ 20} When reviewing a sentence on appeal, an appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate the sentence and remand the matter for resentencing. R.C. 2953.08(G)(2). Pursuant to R.C. 2953.08(G)(2):
"The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division (B) or (D) of [R.C. 2929.13] * * *;
"(b) That the sentence is otherwise contrary to law."
Clear and convincing evidence is:
`"[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."' State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 21} Appellant has asserted that the trial court erred when it did not state the proper findings when it sentenced him beyond the minimum prison sentence for his conviction and that it did not make the proper findings for consecutive sentences. The State has argued that Appellant failed to object at the trial court level and therefore has waived the issue for appellate review. We agree.
 {¶ 22} Our review of the sentencing hearing transcript reveals that Appellant did not object to the alleged lack of findings and reasons on the part of the trial court during the hearing. Failure to object to the sentencing procedure of the trial judge constitutes a forfeiture of the alleged error. Statev. Riley, 9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 32. As such, Appellant has failed to preserve this issue for appeal and his first assignment of error lacks merit.
 III {¶ 23} Appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Boyle, J. concurs.