DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant/Appellant, Maurice S. Galloway, appeals his conviction and sentence by the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On September 28, 2006, Defendant was indicted for two counts of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a fourth degree felony, and one count of possessing criminal tools, in violation of R.C. 2923.24, a fifth degree felony. After a trial to a jury, Defendant was convicted of all counts on March 15, 2007, and sentenced to terms of 18 months imprisonment for each of counts one and two and a definite term of 12 months for count three. All sentences were to be served concurrently. *Page 2 
 {¶ 3} Defendant timely appealed his conviction and sentence and raises four assignments of error.
 Assignment of Error I "The trial court erred by not granting [Defendant's] Criminal Rule 29 motions for acquittal as there was not sufficient evidence to prove the offenses of carrying concealed weapons and possessing criminal tools beyond a reasonable doubt."
 Assignment of Error III "[Defendant's] conviction for carrying concealed weapons was against the manifest weight of the evidence."
 {¶ 4} In his first and third assignments of error, Defendant asserts that there was not sufficient evidence to convict him of carrying concealed weapons and possession of criminal tools and that his conviction for carrying concealed weapons was against the manifest weight of the evidence. Specifically, Defendant argues that the two handguns found in the engine compartment of his automobile were not concealed and could be seen from ordinary observation because his car hood was up at the time of arrest. Defendant asserts that the evidence at trial established that the ordinary observer would have and did see the guns without any action from him, thereby distinguishing his case from this Court's decision in State v. Coker (1984), 15 Ohio App.3d 97, in which we held that an object could be both concealed and in plain view. Defendant asserts that his case is different from Coker, because in Coker, the weapon became visible only when the *Page 3 
defendant exited his vehicle, i.e., the weapon was concealed by defendant's body. Here, Defendant maintains the weapon was always visible.
 {¶ 5} With regard to his conviction for possession of criminal tools, Defendant also asserts that there was no evidence that the backpack in Defendant's car, which contained duct tape, a screwdriver, vice grips, Allen wrenches, a mask and black tee shirt or the black ski mask and flashlight Defendant was holding at the time of his arrest were criminal tools. Defendant further maintains that there was no evidence that Defendant used or intended to use these tools to conceal the guns, or otherwise.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution.State v. Jenks (1991), 61 Ohio St.3d 259, 279. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would *Page 4 
convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. See, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} This Court has explained that "sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. (Emphasis omitted). Accordingly, with regard to Defendant's conviction for carrying concealed weapons, a finding that his conviction was supported by the manifest weight of the evidence is dispositive of his claim of sufficiency.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the *Page 5 
basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 9} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State and convicted Defendant of both crimes.
 {¶ 10} Defendant was convicted of two counts of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), which states: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * (2) A handgun other than a dangerous ordnance."
 {¶ 11} Defendant was also convicted of one count of possessing criminal tools, in violation of R.C. 2923.24, which states that, "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C.2923.24(B) sets forth the following items as prima facie evidence of criminal purpose:
 "(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use; *Page 6 
 "(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;
 "(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."
 {¶ 12} R.C. 2901.21(D)(1) sets forth the requirements for general criminal liability and provides that "[possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." Defendant is not asserting that he did not possess the items found in his car.
 {¶ 13} The jury heard testimony from six witnesses, all produced by the State.
 {¶ 14} Yvette Thompson ("Thompson") lived on West Thornton Street, where Defendant was arrested. She testified that in the early morning of September 18, 2006, she looked out her window and saw a maroon vehicle parked on the street in front of her window. Thompson indicated that she saw a black man in front of the car, with the car hood up, retrieving a handgun from under the hood. Although it was dark, the car was parked underneath two streetlights. Thompson's window was about 15 to 20 feet away from the car.
 {¶ 15} Officer Michael Orrand ("Orrand") was patrolling with Officer Matt Beech ("Beech") on September 28, 2006, and responded to a suspicious person with a weapons call on West Thornton Street. When he arrived at the scene, *Page 7 
Orrand testified that he saw a maroon Buick LeSabre parked on the street. Orrand explained that he saw Defendant get out of the car, open the hood of the car and lean into the engine compartment. Orrand indicated that Defendant was carrying a flashlight and wearing a winter hat rolled up on his head although it was between 60 and 70 degrees that morning. Defendant did not try to run. Orrand explained that he ordered Defendant to the ground and put him in the back of the cruiser. Two other responding officers (Yurick and Horvath) found two weapons in the engine compartment under the hood. Orrand did not look under the hood or see the guns as they were found.
 {¶ 16} Orrand testified that the car belonged to Defendant and an inventory of the vehicle yielded a backpack containing duct tape, some tools and clothing. Orrand then identified various pictures of the vehicle that Beech took, including of the engine and the guns as they were found in the engine compartment under the hood.
 {¶ 17} Beech's testimony supported that of his partner; however Beech actually saw the guns. Beech testified that he saw the butt of the gun in plain view "in a little space tucked behind the engine of the car." He indicated, however, that the revolver and barrel were out of sight. Beech further indicated that because of his experience, he recognized the object as a gun and when he looked closer, he saw two guns "side by side stuck down in the space." Beech indicated that he took pictures of the compartment in which the guns were found. Beech noted that *Page 8 
the compartment in which the guns were found had a lid but that the lid was slightly ajar. He had another officer hold the lid up so he could take pictures that showed the guns clearly in the compartment. Beech identified the guns. Finally, Beech testified that had the compartment lid and car hood been down, he would not have been able to see the guns.
 {¶ 18} Beech's testimony regarding the backpack and items in it was the same as his partner, but Beech also noted that the backpack was zipped and in the closed trunk of Defendant's car.
 {¶ 19} Claude McCutcheon is an investigator with the Summit County Prosecutor's office. He conducted tests on the guns found in Defendant's car and testified that both of the guns were operable.
 {¶ 20} Officer Robert Horvath ("Horvath") and his partner, Vince Yurick ("Yurick") were called as back-up to West Thornton Street on September 18, 2006. Horvath testified that he found another individual three blocks from the scene after a call was made to 911. Horvath indicated that he arrested this individual, Donta Black, for obstructing official business. Mr. Black's wallet was found in Defendant's car.
 {¶ 21} Horvath also testified that he was the first to see "what looked like just the butt of a gun in one of the compartments of the engine" of Defendant's car. Horvath testified that he "had to look closer because there wasn't much *Page 9 
showing." Only a small portion of the guns were in plain view. Horvath indicated that the guns were loaded.
 {¶ 22} Yurick's testimony supported that of his partner. Yurick also testified that there had been more instances lately of criminals hiding guns under the hoods of their cars and specifically described one such instance. Yurick indicated that he found some tools wrapped in a black t-shirt in a driveway along the route Black had walked before they apprehended him.
 {¶ 23} Defendant's assertion that his conviction for carrying a concealed weapon is against the manifest weight of the evidence and is not supported by sufficient evidence because the guns were not concealed and that the evidence established that the guns were found by ordinary observation is without merit. In State v. Coker, we held that:
 "It is not necessary to prove that the shotgun was carried in such manner or in such location as to give absolutely no notice of its presence under any kind of observation. Rather, it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. This is a question of fact to be resolved by the trier of fact." Coker (1984), 15 Ohio App.3d at 97, 98.
 {¶ 24} Defendant urges us to distinguish his case from Coker by arguing that the gun in Coker, located "between passenger's seat and the transmission hump," was only revealed when the defendant got out of the car. Coker at 97. Here, Defendant asserts, the guns were always visible and in plain view. The testimony at trial, however, was that the butt of the gun, as hidden in the storage *Page 10 
compartment, was in plain view only such that an experienced police officer recognized the object as a gun. The revolver and barrel were concealed and both guns were in a small compartment next to the engine, which compartment had a lid. In State v. Reed (Nov. 27, 1991), 9th Dist. No. 2643, we affirmed a carrying a concealed weapon conviction as being supported by sufficient evidence where the defendant had the gun in his pocket with the butt of the gun exposed. Reed at *2, citingCoker, 15 Ohio App.3d at 98. We noted, that "the mere fact that a trained law enforcement officer suspected there was a gun in [the defendant's] pocket does not require a conclusion" that the gun was not concealed. Reed at *2. The same holds true here.
 {¶ 25} Moreover, while the facts of Coker are different in that the gun in Coker only became visible after the defendant exited his car, our decision in Coker adopted the reasoning of the Fourth District Court of Appeals in State v. Pettit (1969), 20 Ohio App.2d 170, 173-74. SeeCoker at 98. In Pettit, the court held that a weapon was concealed by the mere fact that it was dark and could not be seen, i.e., its concealed nature did not depend upon the defendant conducting himself in such a way as to conceal and then reveal the weapon. Such is the instant case. It was still dark when Defendant was arrested. The guns were hidden in a dark storage compartment and only the butt of the gun was seen and identified by an experienced police officer. It is of no import that Defendant did not take any action that revealed the guns. *Page 11 
 {¶ 26} Defendant's conviction for carrying concealed weapons is not against the manifest weight of the evidence. Because manifest weight is also dispositive of his sufficiency argument, we conclude that his carrying concealed weapons conviction was also supported by sufficient evidence. See Roberts at *2.
 {¶ 27} As to Defendant's contention that the trial court erred in denying his Crim.R. 29 motion with regard to his conviction for possession of criminal tools, we hold that the State established "[possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use." R.C. 2923.24(B)(3). Although Defendant was not charged with attempt, "the inchoate character of R.C.2923.24 runs deeper than that of the criminal attempt statute."State v. McDonald (1987), 31 Ohio St.3d 47, 57-8, Douglas, J., concurring. Accordingly, while R.C. 2923.24 requires the State to show that a defendant possessed an instrument for a criminal purpose, it does not need to demonstrate a substantial step towards such crime as required by attempt statutes.
 {¶ 28} The State produced evidence establishing that Defendant was arrested wearing a ski mask in warm weather, carrying a flashlight and trying to retrieve two guns hidden in a compartment under the hood of his car that was parked in a residential neighborhood while it was dark. Also in his car were duct tape, another ski mask, wrenches, vice grips and a screwdriver. In reviewing this evidence in a manner most favorable to the State, it is reasonable that a jury could *Page 12 
determine from this evidence that Defendant intended to use any of these items for a criminal purpose. As we stated in State v. Sanders, 9th Dist. No. 23504, 2007-Ohio-2898 "[t]he State presents prima facie evidence of criminal purpose if it provides that an item is `commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.'" Sanders at ¶ 13, quoting R.C.2923.24(B)(3). "`If such evidence is presented and believed, it is sufficient to establish guilt unless it is rebutted or proven contrary.'" Sanders at ¶ 13, quoting State v. Castle (Oct. 6, 1999), 9th Dist. No. 19324, at *8, citing State v. Cummings (1971),25 Ohio St.2d 219, paragraph one of the syllabus.
 {¶ 29} As to Defendant's conviction for possession of criminal tools, we hold that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and therefore Defendant's conviction was supported by sufficient evidence. SeeJenks at paragraph two of the syllabus.
 {¶ 30} Based on our review of the entire record, we conclude that Defendant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved the Defendant and convicted him accordingly. Defendant's conviction for carrying concealed weapons is not against the manifest weight of the evidence and accordingly is supported by sufficient evidence. Roberts at *2. Defendant's conviction for possession of criminal tools was supported by sufficient evidence. *Page 13 
 {¶ 31} Defendant's first and third assignments of error are overruled.
 Assignment of Error II "The court abused its discretion by adding to the jury instructions the additional language that a weapon need not be totally hidden from observation in order to render it concealed over the objection of [Defendant]."
 {¶ 32} Defendant asserts that the trial court improperly added the following instruction to the definition of "concealed," over defense counsel's objection, when instructing the jury on the law related to R.C. 2923.12:
 "Additionally, a weapon need not be totally hidden from observation in order to render it concealed."
Defendant asserts that this language, which came from this Court's decision in State v. Coker was misleading because the facts ofCoker are distinguishable from the instant facts, as discussed above. Defendant also notes Ohio Jury Instructions define the word "concealed" and that the additional instruction confuses that definition.
 {¶ 33} "[T]he giving of jury instructions is within the sound discretion of the trial court." Van Scyoc v. Huba, 9th Dist. No. 22637,2005-Ohio-6322, at ¶ 6; State v. Brady, 9th Dist. No. 22034,2005-Ohio-593, at ¶ 5, citing State v. Hipkins (1982), 69 Ohio St.2d 80,82. "We review such a decision under an abuse of discretion standard."Van Scyoc at ¶ 6, citing State v. Clay, 9th Dist. No. 04CA0033-M,2005-Ohio-6, at ¶ 5. "A trial court must charge a jury with instructions that are a correct and complete statement of the law." Wilson v. *Page 14 United Fellowship Club of Barberton, 9th Dist. No. 23241,2007-Ohio-2089, at ¶ 9, citing Haller v. Goodyear Tire Rubber Co., 9th Dist. No. 20669, 20670, 2002-Ohio-3187, at ¶ 18, citing Marshall v.Gibson (1985), 19 Ohio St.3d 10, 12. "`A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced.'" Haller at ¶ 18, quoting Marshall, 19 Ohio St.3d at 12 (citations omitted).
 {¶ 34} "An appellate court must review the jury instructions as a whole." Wilson at ¶ 10, citing Haller at ¶ 19. "`If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been mislead. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party.' (Citations omitted.)" Haller at ¶ 19, quoting Wozniak v.Wozniak (1993), 90 Ohio App.3d 400, 410; see, also, Kokitka v. FordMotor Co. (1995), 73 Ohio St.3d 89, 93.
 {¶ 35} The challenged jury instruction set forth above was given to the jury immediately after the jury was instructed as to the definition of "concealed," which is contained in Ohio Jury Instructions, as follows:
 "Concealed. Next definition. Concealed means that the deadly weapon was out of sight or so hidden that it could not be seen by ordinary observation by others near enough to see it." *Page 15 
 {¶ 36} We do not agree that the additional instruction fromCoker is misleading. The language from Coker further defines the word concealed. Moreover, it is a correct statement of the law. SeeWilson at ¶ 9. As discussed above, although the facts of the instant matter are not identical to the facts in Coker, our holding inCoker was broader than that suggested by Defendant. It is not reversible error merely because Defendant asserts that the jury may have been misled. See Haller at ¶ 19.
 {¶ 37} Defendant's second assignment of error is overruled.
 Assignment of Error IV "The trial court erred by convicting [Defendant] of two counts of carrying concealed weapons and also a separate count of possession of criminal tools with the intent to carry concealed weapons when they were all allied offenses of similar import."
 {¶ 38} In his last assignment of error, Defendant argues that his sentences for both carrying concealed weapons and possession of criminal tools were erroneous as, under the facts of this case, the offenses were allied offenses of similar import. Defendant asserts that because the underlying criminal action in the possession of criminal tools conviction was to carry the concealed weapons, the elements of both crimes require the same three elements: (1) possession; (2) of a weapon or device (handgun); (3) with a criminal purpose (to conceal).
 {¶ 39} Our review of the record demonstrates that Defendant failed to object to his multiple sentences when he was convicted or at his sentencing hearing. "It has been stated many times that an error must be brought to the *Page 16 
attention of the trial court at a time when it may be corrected and may not be raised for the first time on appeal." State v. Riley, 9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 27, citing State v. Dent, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 6, citing State v. Awan (1986),22 Ohio St.3d 120, syllabus. "Closer to the point, the Ohio Supreme Court has specifically held that a failure to object to sentencing errors in the context of allied offenses will constitute a waiver of such errors."Riley at ¶ 27, citing State v. Comen (1990), 50 Ohio St.3d 206, 211.
 {¶ 40} "In the present appeal, [Defendant] has not argued plain error. Consequently, this Court will not consider whether plain error exists in this case." Riley at ¶ 30, citing State v. Knight, 9th Dist. No. 03CA008239, 2004-Ohio-1227, at ¶ 10.
 {¶ 41} Defendant's fourth assignment of error is overruled.
 {¶ 42} Each of Defendant's assignments of error is overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 17 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J., DICKINSON, J., CONCUR *Page 1