DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Karl Varner, has appealed from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} In the early afternoon of June 6, 2007, Sabrina Robinson borrowed her friend's gray Mitsubishi Eclipse and picked up Varner at his sister's house in Akron, Ohio. The two drove along East Crosier Street on their way back to Robinson's home. While driving on East Crosier, however, Varner spotted Troy Martin walking down the street and ordered Robinson to stop the car. She pulled off to the side of the road after driving past Martin, and Varner exited the vehicle. Varner then fired a handgun, causing Martin to hide behind a nearby car parked in Louis Moore's driveway. Moore, a resident of East Crosier, and his daughter, Latasha Harris, witnessed the shooting. After Varner fired his gun, he got back into the Eclipse, and he and *Page 2 
Robinson sped off. Robinson dropped Varner off on the west side of Akron. Subsequently, she took the Eclipse to a local garage and had it painted a different color.
 {¶ 3} On June 21, 2007, the grand jury indicted Varner on the following counts: (1) attempted murder pursuant to R.C. 2903.02(A)/2923.02; (2) felonious assault pursuant to R.C. 2903.11(A)(2); (3) having a weapon while under disability pursuant to R.C. 2923.13(A)(2); (4) carrying a concealed weapon pursuant to R.C. 2923.12(A)(2); (5) discharging a firearm on or near a prohibited premises pursuant to R.C. 2923.162(A)(3); and (6) improperly handling firearms in a motor vehicle pursuant to R.C. 2923.16(B). Both the attempted murder and felonious assault charges also contained firearm specifications pursuant to R.C. 2941.145. Before trial, the State dismissed counts five and six, and Varner pled guilty to count three.
 {¶ 4} On August 20, 2007, Varner's jury trial commenced. The trial consisted of two different cases of Varner's with two different case numbers. Case No. 2007-06-1902(B)[1] involved the charges of attempted murder, felonious assault, and carrying a concealed weapon. Case No. 2007-01-0254 involved charges of domestic violence as well as a charge that Varner violated a protection order. Although the same jury heard the two cases during the same trial, the trial court never consolidated the cases and ultimately entered two separate judgment entries based on the jury's verdicts. The jury found Varner guilty of the attempted murder, felonious assault, and carrying a concealed weapon charges in Case No. 2007-06-1902(B). For purposes of sentencing, the trial court merged Varner's attempted murder and felonious assault convictions and sentenced him to a total of ten years in prison in Case No. 2007-06-1902(B). *Page 3 
 {¶ 5} On October 31, 2007, Varner filed his notice of appeal in Case No. 2007-06-1902(B). Varner's appeal is now properly before this Court, raising three assignments of error for our review.
 II Assignment of Error Number One "THE CONVICTION OF THE APPELLANT FOR THE CHARGES OF ATTEMPTED MURDER, FELONIOUS ASSAULT, CARRYING CONCEALED WEAPONS, DOMESTIC VIOLENCE, AND VIOLATING A PROTECTION ORDER IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED[.]"
 Assignment of Error Number Two "THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSES OF ATTEMPTED MURDER, FELONIOUS ASSAULT, CARRYING CONCEALED WEAPONS, DOMESTIC VIOLENCE, AND VIOLATING A PROTECTION ORDER BEYOND A REASONABLE DOUBT[.]"
 Assignment of Error Number Three "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 6} In his first assignment of error, Varner argues that his convictions were against the manifest weight of the evidence. In his second and third assignments of error, Varner argues that his convictions also were based on insufficient evidence. We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether *Page 4 
the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Varner's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the *Page 5 
evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 9} Initially, we note that an appellant's assignment of error generally provides a court with a roadmap and directs this Court's analysis. State v. Bashlor, 9th Dist. Nos. 07CA009199 07CA009209,2008-Ohio-997, at ¶ 9, citing App. R. 16(A). Varner's assignments of error, however, challenge several convictions that are not properly before this Court. Varner failed to appeal from the judgment in Case No. 2007-01-0254, which involved his convictions for committing domestic violence and violating a protection order. Furthermore, Varner has not challenged the firearm specifications attached to his attempted murder and felonious assault convictions in this appeal from Case No. 2007-06-1902(B). See State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3 (noting that appellants bear the burden of demonstrating error on appeal through arguments supported by legal authority and citations to the record); App. R. 16(A)(7). Consequently, we confine our analysis to the convictions from which Varner actually appealed: his attempted murder, felonious assault, and carrying a concealed weapon convictions.
Attempted Murder {¶ 10} R.C. 2903.02(A) provides that, "[n]o person shall purposely cause the death of another[.]" R.C. 2923.02(A) defines "attempt" as "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, * * * engaging] in conduct that, if successful, would constitute or result in the offense." "Purpose" refers to the *Page 6 
"specific intention to cause a certain result, or * * * to engage in conduct of [a certain] nature." R.C. 2901.22(A). On the other hand, a person acts "knowingly" when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 11} Varner argues that the record does not support the jury's conclusion that he attempted to murder Troy Martin because there was no testimony that he fired a gun at or near Martin and no evidence of motive. We disagree.
 {¶ 12} Sabrina Robinson testified that Varner ordered her to pull over the Mitsubishi Eclipse when he saw Martin walking down East Crosier Street. She further testified that she knew Martin and Varner had experienced problems with each other in the past. According to Robinson, Varner exited the vehicle and began to walk towards the back of the vehicle in Martin's direction. After a few seconds, Robinson heard a gunshot, but never saw what happened because she stayed facing the front of the vehicle after Varner exited. She testified that after the gunshot Varner got back into the car. At this point, she saw that he had a handgun. Varner allegedly told Robinson that he fired the gun because Martin "need[ed] to know" and Varner wanted "to scare him[.]"
 {¶ 13} Louis Moore, a resident of East Crosier Street, testified that on the afternoon of the shooting he was waiting for his daughter, Latasha Harris, to pick him up. Moore stated that Harris arrived at the house and backed her Dodge Neon into the driveway. Meanwhile, Moore came outside on the porch, spotted Martin walking in his direction, and began to speak with him. Moore saw a "small gray car" pass Martin and stop near the driveway of the adjoining house. Moore testified that Varner exited the passenger's side of a vehicle. He then saw Varner reach *Page 7 
under the passenger's seat of the vehicle, pull out a gun, say "Troy," and fire at Martin. When questioned about the direction of the shooting, Moore specified that Varner fired "right across me" and that the shot "bounced off my daughter's windshield."
 {¶ 14} Latasha Harris testified that she backed her Dodge Neon into Moore's driveway when she arrived to pick him up and waited for him in the vehicle. She also saw the silver Eclipse pass by while Martin was walking in her direction. Harris testified that she subsequently heard Varner say "Troy" and saw a gun in Varner's hand. Varner then fired the gun, and the bullet struck Harris's windshield. Morris stated that she only ever saw the gun in Varner's hand. She never specified if she saw where Varner took the gun from, but remarked on how quickly the entire incident occurred.
 {¶ 15} Officer Donald Frost of the Akron Police Department testified that he took photographs of the scene on East Crosier, including a photograph of Harris's Dodge Neon. He testified that the vehicle sustained gunshot damage to its front windshield. Officers were able to locate a shell casing in the street, which Officer Frost also photographed. Andrew Chappell, a forensic scientist from the Ohio Bureau of Criminal Identification and Investigation, testified that he performed ballistics testing on the shell casing and concluded that the casing had been fired from Varner's handgun.
 {¶ 16} Martin, the victim in this case, also testified at Varner's trial. Martin's trial testimony, however, differed from his initial statement to police. At trial, Martin testified that he saw Varner get out of the passenger's side of the Eclipse and hold his hands up. Seeing that Varner's hands were empty, he turned his back to Varner and continued to walk down the street. Martin claimed that he then heard a gunshot go off, but "didn't see anything because [he] ran." Martin admitted that his initial statement to police contained the statement that Varner "reached *Page 8 
under the passenger seat and came out with a gun[,]" but he claimed that his initial statement was not accurate because he was just "going along with what was being said." Martin admitted that he lied to police about his identity during their investigation, by supplying them with a false name, because he had warrants out for his arrest. Martin also admitted to having multiple, previous drug convictions.
 {¶ 17} Based on the record, we cannot conclude that the jury lost its way in convicting Varner of attempted murder when he ordered Robinson to stop the vehicle she was driving immediately after he spotted Martin, exited the vehicle, called Martin's name, and shot at him. Several witnesses testified that Varner shot straight, not towards the sky as he claims on appeal, and the evidence police recovered from the scene confirmed that testimony. While Varner argues that the jury lost its way because the State failed to prove motive, "[m]otive is not an element of the crime of homicide required to be established to warrant a conviction." Fabian v. State (1918), 97 Ohio St. 184, 189. The record supports the conclusion that Varner attempted to murder Martin and failed because the bullet went past Martin and instead struck Harris's windshield. See State v. Woods (1976), 48 Ohio St.2d 127, paragraph one of the syllabus (holding that a criminal attempt is completed upon the commission of an act constituting a "substantial step" towards completing the underlying crime), overruled on other grounds, State v.Downs (1977), 51 Ohio St.2d 47, paragraph one of the syllabus. Consequently, Varner's argument lacks merit.
Felonious Assault {¶ 18} R.C. 2903.11(A)(2) provides that, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A firearm qualifies as both a "deadly weapon" and "dangerous ordnance." See *Page 9 
R.C. 2923.11(A) (defining a deadly weapon as "any instrument, device, or thing capable of inflicting death"); R.C. 2923.11(K)(4) (listing a firearm as a dangerous ordnance).
 {¶ 19} Varner argues that his felonious assault conviction was against the manifest weight of the evidence because "[a]gain, the record in this case simply lacks any evidence that [Varner] attempted to cause physical harm to Martin." We have already determined, however, that the record supports Varner's attempted murder conviction. Consequently, we also conclude that the same evidence supports the conclusion that Varner attempted to cause physical harm to Martin. Varner's argument that his felonious assault conviction was against the weight of the evidence lacks merit.
Carrying a Concealed Weapon {¶ 20} R.C. 2923.12(A)(2) provides that, "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] handgun[.]" Whether a handgun is concealed is a question for the trier of fact, who must determine whether the State has proven that "ordinary observation would [have] give[n] no notice of [the handgun's] presence." State v. Galloway, 9th Dist. No. 23729,2008-Ohio-114, at ¶ 23, quoting State v. Coker (1984),15 Ohio App.3d 97, 98.
 {¶ 21} Varner argues that the record only contains evidence that he exited the Mitsubishi Eclipse in which he was a passenger and reached under the passenger's seat. He argues that no one testified that he had a gun concealed under the seat. Rather, he claims, witnesses only testified that he visibly had the gun in his hand.
 {¶ 22} Martin testified at trial that when Varner initially exited the vehicle, he held his hands up and they were empty. Martin admitted that in his initial statement he also told officers that he saw Varner reach under the passenger's seat and pull out a gun. Additionally, Louis *Page 10 
Moore testified that after Varner exited the Eclipse he reached under the seat and pulled out a gun. The only other person in the vehicle with Varner, Sabrina Robinson, never specified the location from which Varner retrieved his gun. She only testified that she heard Varner discharge the gun and saw the gun upon his reentering the vehicle. Thus, the State did not introduce any direct evidence that Varner had his gun under his seat before exiting the vehicle on East Crosier Street. The evidence, however, supports the conclusion that Varner did not have the gun in his hands when he exited the vehicle, but then reached under the passenger's seat and emerged with the gun. From these facts, the jury could have concluded that Varner was knowingly concealing his gun under the passenger's seat. See State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus ("Circumstantial evidence and direct evidence inherently possess the same probative value[.]"). Varner's argument that his carrying a concealed weapon conviction was against the weight of the evidence lacks merit.
 {¶ 23} Having disposed of Varner's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Varner's first, second, and third assignments of error are overruled.
 III {¶ 24} Varner's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Carr, P. J. and Dickinson, J., concur.
[1] Varner's codefendant, Sabrina Robinson, had Case No. 2007-06-1902(A). *Page 1